1

2                    UNITED STATES DISTRICT COURT

3                   EASTERN DISTRICT OF WASHINGTON

4    SHELLIE L. KAY,                )
                                    )  No. CV-10-434-JPH
5              Plaintiff,           )
                                    )
6    v.                             )  ORDER GRANTING DEFENDANT'S
                                    )  MOTION FOR SUMMARY JUDGMENT
7    MICHAEL J. ASTRUE, Commissioner)
     of Social Security,            )
8                                   )
               Defendant.           )
9                                   )
                                    )
10   _____)

11       **BEFORE THE COURT** are cross-motions for summary judgment noted

12   for hearing without oral argument on June 1, 2012.  (ECF No. 16,

13   22).  Attorney Maureen J. Rosette represents plaintiff; Special

14   Assistant United States Attorney Gerald J. Hill represents the

15   Commissioner of Social Security (defendant).  The parties have

16   consented to proceed before a magistrate judge.  (ECF No. 7).  On

17   December 14, 2011, plaintiff filed a reply.  (ECF No. 22).  After

18   reviewing the administrative record and the briefs filed by the

19   parties, the court **grants** defendant's Motion for Summary Judgment

20                           **JURISDICTION**

21       Plaintiff applied for a period of disability and disability

22   insurance benefits (DIB) on January 30, 2009, alleging disability

23   as of January 26, 2009 (Tr. 14).  The applications were denied

24   initially and on reconsideration.

25       Administrative Law Judge (ALJ) Gene Duncan held a hearing on

26   March 5, 2010 (Tr. 35-97), and issued an unfavorable decision on

27   March 31, 2010 (Tr. 14-23).  The Appeals Council denied review on

28   November 19, 2010 (Tr. 1-6).  The ALJ's March 2010 decision became

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1   the final decision of the Commissioner, which is appealable to the
2   district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed
3   this action for judicial review on December 13, 2010.  (ECF No. 2,
4   4).

5                          **STATEMENT OF FACTS**

6        The facts have been presented in the administrative hearing
7   transcript, the ALJ's decision, and the briefs of the parties.
8   They are only briefly summarized here.

9        Plaintiff was born on March 22, 1962, and was 46 years old on
10  the date of the ALJ's decision (Tr. 21).  She obtained her high
11  school diploma and attended two years of college (Tr. 38-39).  She
12  is certified as a medical assistant (Tr. 39).  She last worked six
13  months prior to the administrative hearing (Tr. 40) and has past
14  relevant work as a daycare provider and certified medical
15  assistant (Tr. 21).

16       At the hearing, plaintiff testified that she could not return
17  to her prior work because of "chronic fatigue" and "chronic flu
18  symptoms" (Tr. 40).  She stated that the main condition that
19  causes her to miss work is rheumatoid arthritis (Tr. 40).
20  Plaintiff indicated that she has been diagnosed with "zero gravity
21  rheumatoid arthritis" because all the tests come back negative,
22  but the symptoms are real (Tr. 53).  She described the symptoms as
23  chronic fatigue and pressure in the joints (Tr. 54).  Plaintiff
24  testified that she had pain in her back, hands and feet (Tr. 56)
25  and that ibuprofen seems to help with the symptoms, along with
26  muscle relaxers at night (Tr. 57).  Plaintiff stated that the
27  fatigue affects her eyesight and she can only read for about half
28  an hour before she has blurred vision (Tr. 60).  She has also been

1  diagnosed with sleep apnea and suffers from migraine headaches,

2  asthma, rapid heartbeat, diabetes controlled with diet, and

3  diabetic neuropathy.

4                    **SEQUENTIAL EVALUATION PROCESS**

5      The Social Security Act (the Act) defines disability as the

6  "inability to engage in any substantial gainful activity by reason

7  of any medically determinable physical or mental impairment which

8  can be expected to result in death or which has lasted or can be

9  expected to last for a continuous period of not less than twelve

10 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also

11 provides that a Plaintiff shall be determined to be under a

12 disability only if any impairments are of such severity that a

13 plaintiff is not only unable to do previous work but cannot,

14 considering plaintiff's age, education and work experiences,

15 engage in any other substantial gainful work which exists in the

16 national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

17 Thus, the definition of disability consists of both medical and

18 vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

19 (9th Cir. 2001).

20     The Commissioner has established a five-step sequential

21 evaluation process for determining whether a person is disabled.

22 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person

23 is engaged in substantial gainful activities.  If so, benefits are

24 denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If

25 not, the decision maker proceeds to step two, which determines

26 whether plaintiff has a medically severe impairment or combination

27 of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),

28 416.920(a)(4)(ii).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1    If plaintiff does not have a severe impairment or combination

2   of impairments, the disability claim is denied.  If the impairment

3   is severe, the evaluation proceeds to the third step, which

4   compares plaintiff's impairment with a number of listed

5   impairments acknowledged by the Commissioner to be so severe as to

6   preclude substantial gainful activity.  20 C.F.R. §§

7   404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P

8   App. 1.  If the impairment meets or equals one of the listed

9   impairments, plaintiff is conclusively presumed to be disabled.

10  If the impairment is not one conclusively presumed to be

11  disabling, the evaluation proceeds to the fourth step, which

12  determines whether the impairment prevents plaintiff from

13  performing work which was performed in the past.  If a plaintiff

14  is able to perform previous work, that plaintiff is deemed not

15  disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At

16  this step, plaintiff's residual functional capacity (RFC) is

17  considered.  If plaintiff cannot perform past relevant work, the

18  fifth and final step in the process determines whether plaintiff

19  is able to perform other work in the national economy in view of

20  plaintiff's residual functional capacity, age, education and past

21  work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

22  416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

23      The initial burden of proof rests upon plaintiff to establish

24  a *prima facie* case of entitlement to disability benefits.

25  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

26  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is

27  met once plaintiff establishes that a physical or mental

28  impairment prevents the performance of previous work.  The burden

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  then shifts, at step five, to the Commissioner to show that (1)

2  plaintiff can perform other substantial gainful activity and (2) a

3  "significant number of jobs exist in the national economy" which

4  plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

5  Cir. 1984).

6                          **STANDARD OF REVIEW**

7       Congress has provided a limited scope of judicial review of a

8  Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold

9  the Commissioner's decision, made through an ALJ, when the

10 determination is not based on legal error and is supported by

11 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995

12 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

13 1999).  "The [Commissioner's] determination that a plaintiff is

14 not disabled will be upheld if the findings of fact are supported

15 by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572

16 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

17 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

18 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.

19 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

20 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

21 573, 576 (9th Cir. 1988).  Substantial evidence "means such

22 evidence as a reasonable mind might accept as adequate to support

23 a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

24 (citations omitted).  "[S]uch inferences and conclusions as the

25 [Commissioner] may reasonably draw from the evidence" will also be

26 upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

27 On review, the Court considers the record as a whole, not just the

28 evidence supporting the decision of the Commissioner.  *Weetman v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

*Sullivan,* 877 F.2d 20, 22 (9ᵗʰ Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9ᵗʰ Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9ᵗʰ Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9ᵗʰ Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9ᵗʰ Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found plaintiff was insured through December 31, 2013. At step one, he found she did not engage in substantial gainful activity after onset on January 26, 2009 (Tr. 16). At step two, he found plaintiff had severe impairments of "obesity, asthma, sleep apnea, migraine headaches, and a somatoform disorder" (Tr. 16). At step three, he found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 19). He assessed an RFC for a range of light work (Tr. 19-21), and determined that plaintiff's

medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 21). At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work (Tr. 21). At step five, based on the vocational expert testimony and plaintiff's age, education, work experience, and RFC, the ALJ found that there were light and sedentary jobs in the national economy that plaintiff could perform (Tr. 22). Accordingly, the ALJ concluded that plaintiff was not disabled as defined by the Social Security Act from January 26, 2009, through the date of his decision, March 31, 2010 (Tr. 22-23).

**ISSUES**

Plaintiff alleges the ALJ should have found at step two that she suffered from the severe impairments of fibromyalgia and sero-negative inflammatory arthritis (ECF No. 17 at 14-17). She also alleges the ALJ erred because the substantial weight of the evidence supports a more limited mental RFC determination (ECF No. 17 at 17-20), and that the ALJ did not properly consider plaintiff's testimony regarding her limitations from her various impairments (ECF No. 17 at 20-22). Lastly, plaintiff argues that new evidence presented to the Appeals Council shows that plaintiff is disabled (ECF No. 17 at 22-24).

The Commissioner asserts the evidence before the ALJ did not support the diagnoses of fibromyalgia and inflammatory arthritis (ECF No. 23 at 6-7), the ALJ reasonably assessed that plaintiff's mental functioning only resulted in a below average pace and that

she would be off-task up to 5% of the time (ECF No. 23 at 8-11),
the ALJ provided specific reasons supported by the record to find
plaintiff's statements concerning her symptoms not entirely
credible (ECF No. 23 at 11-14), and the new evidence is immaterial
(ECF No. 23 at 15-17).

## DISCUSSION

**A. New Evidence**

Plaintiff argues that new evidence presented to the Appeals
Council shows that plaintiff is unable to work (ECF No. 17 at 22-
24). Plaintiff directs the court's attention to the May 20, 2010
report of treating physician Rita M. Snow, M.D., who opined that
"[g]iven [plaintiff's] inflammatory arthritis and her fibromyalgia
I do not feel she is able to work on a consistent basis" (Tr.
498). (ECF No. 17 at 23-24).

The regulation provides that the Appeals Council shall
"consider" additional evidence, unless the evidence is not new,
material, or related to the period of the ALJ's decision. 20
C.F.R. § 404.970(b)(1). Accordingly, if the Appeals Council finds
the evidence is not material or not related to the period of the
ALJ's decision, then the Appeals Council did not "consider" the
evidence. If the Appeals Council did not consider the evidence
(i.e. it finds the evidence not material or not related to the
relevant period), the new evidence is not a part of the
administrative record, and the materiality/good cause inquiry must
be applied.

Here, the Appeals Council indicated it looked at the records
dated May 3 to May 10, 2010 from Northwest and April 21 to May 20,
2010 from Physician's Clinic of Spokane (Tr. 2). The Appeals

Council noted that the ALJ decided the case through March 31, 2010, and the new information concerned a later time.  The Appeals Council determined that the new information did not affect the decision about whether plaintiff was disabled before March 31, 2010 (Tr. 2).  Consequently, the new evidence is not a part of the administrative record, and the materiality/good cause inquiry must be applied.  *See infra.*

Section 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to incorporate the evidence in a prior proceeding.  *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).  To be material, the new evidence must bear directly and substantially on the matter in issue.  *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985).  There must also be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary.  *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).

The new evidence submitted by plaintiff is immaterial because it does not concern the period under review.  Dr. Snow's opinion was rendered more than two months after the ALJ's decision in this case.  Moreover, plaintiff has not shown good cause for her failure to incorporate these records prior to the ALJ's decision.  Plaintiff offers no reason why she failed to solicit an opinion from Dr. Snow at an earlier time.  A logical explanation is that when plaintiff failed to succeed on her disability claim, she sought out new evidence to support her assertion of disability.  The good cause requirement would "be meaningless if such circumstances were sufficient to allow introduction of new

evidence." *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984).

Since Plaintiff fails to meet the materiality and good cause requirements, the undersigned declines to consider the new evidence submitted to the Appeals Council.

**B. Severe Impairments**

Plaintiff contends that the ALJ should have determined that she suffered from the severe impairments of fibromyalgia and sero-negative inflammatory arthritis (ECF No. 17 at 14-17).

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. Plaintiff has the burden of proving that she has a severe impairment. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that she is disabled. 20 C.F.R. § 416.912(a). In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. SSR 96-4p.

At the administrative hearing, medical expert Steven Gerber, M.D., testified he saw no clinical or laboratory evidence of arthritis in the record (Tr. 43). He stated that "[o]ne cannot have arthritis with normal laboratory studies, normal physical examinations and in the absence of any characteristic x-ray changes" (Tr. 45). Dr. Gerber indicated he believed that there

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

was a misdiagnosis of arthritis (Tr. 45).  He further stated that he saw no documentation of fibromyalgia (Tr. 44).  Instead, he reported he saw numerous negative examinations that typically exclude the diagnosis of fibromyalgia (Tr. 44).

Plaintiff concedes that David Sandoval, M.D., noted on November 13, 2008, that plaintiff's fibromyalgia spots were negative (Tr. 349) and indicated arthralgia[1] on January 5, 2009, but stated he was unsure about the diagnosis (Tr. 324-326).  (ECF No. 17 at 15).  As noted by the ALJ, on May 13, 2009, it was noted under fibromyalgia that examination has been and remains completely normal and that laboratory studies including CPK and electrodiagnostic workup were all normal (Tr. 17, 376).

The evidence before the ALJ did not establish that fibromyalgia and inflammatory arthritis were severe impairments. While plaintiff points to May 3, 2010 records from Jeffrey Butler, M.D., (Tr. 465-482) and Dr. Snow's May 20, 2010 report (Tr. 498), those records post-date the ALJ's March 31, 2010, decision.  As explained above, the undersigned declines to consider the new evidence submitted to the Appeals Council.  *Supra*.  The ALJ's step two determination is supported by the record and free of legal error.

**C. Mental Limitations**

With respect to Plaintiff's mental ability, Plaintiff argues that limitations assessed by Dennis R. Pollack, Ph.D., and medical expert Marian Martin, Ph.D., reflect greater restrictions from a

---

[1] Dr. Gerber explained that arthralgia is a symptom, not a diagnosis of arthritis (Tr. 43).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

psychological standpoint than as assessed by the ALJ in this case. (ECF No. 17 at 17-20).

Dr. Pollack examined plaintiff on February 25, 2010, and completed a psychological assessment on February 26, 2010 (Tr. 438-448). The results of the MMPI-2 indicated that plaintiff may have been exaggerating her difficulties (Tr. 442), and Dr. Pollack noted that the results of the personality testing suggested the possibility of exaggeration (Tr. 443). Dr. Pollack nevertheless indicated that the results of the neuropsychological testing suggested the possibility of a neuropsychological deficit (Tr. 443). He diagnosed a somatoform disorder[2], NOS, dysthymic disorder[3] and cognitive disorder and gave plaintiff a GAF score of 50[4] (Tr. 443). Dr. Pollack filled out a Mental Medical Source Statement and checked boxes indicating that plaintiff had marked limitations in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 445-448). Dr.

_____

[2] Somatoform disorders are characterized by physical symptoms or by perceived defects in appearance. Symptoms or perceived defects cannot be explained by an underlying physical disorder. THE MERCK MANUAL 1736 (18th ed. 2006).

[3] Dysthymia is defined as a low-level or subthreshold form of depression. THE MERCK MANUAL 1705 (18th ed. 2006).

[4] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

Pollack opined that plaintiff had mild or no limitation with respect to all other categories of mental ability (Tr. 445-448).

Dr. Martin testified as a medical expert at the administrative hearing held on March 5, 2010 (Tr. 47-52). Dr. Martin stated that the record reflected diagnoses of a dysthymic disorder, an anxiety disorder, and a somatoform disorder, NOS (Tr. 49). Dr. Martin opined that plaintiff would have mild impairments of daily living, mild impairments of social functioning, moderate impairments of concentration, persistence and pace and no episodes of decompensation (Tr. 50). Dr. Martin testified that plaintiff's ability to sustain her concentration is quite good but, because of physical symptoms, there would be times where she would have more trouble sustaining concentration (Tr. 51). He described these time periods as when there was "increased stress" (Tr. 51). Dr. Martin stated that plaintiff would have moderate limitations with her ability to maintain attention and concentration for extended periods and with her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 50).

The ALJ noted Dr. Pollack's findings and remarked that Dr. Pollack appears to always find moderate or marked limitations for the limitations he assessed for plaintiff (Tr. 18). While there is no evidence that Dr. Pollack was directly involved with plaintiff's application process, when a physician is involved in the application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating his testimony. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1996).  In any event, the ALJ determined that plaintiff's treatment records did not support a finding that she suffers from any significant mental difficulties as assessed by Dr. Pollack (Tr. 18).  This findings is supported by the record.  On March 19, 2009, Dave Sanford, Ph.D., filled out a Psychiatric Review Technique form indicating that plaintiff's anxiety-related disorders resulted in no greater restrictions than a mild limitation on activities of daily living (Tr. 353-366).  On August 5, 2009, Eugene Kester, M.D., indicated there was no worsening of plaintiff's condition and that plaintiff was stable on prozac (Tr. 396).

Furthermore, as noted by the Commissioner, Section II of Dr. Pollack's Mental Functional Capacity Assessment form asks the consultant to explain the summary conclusions in narrative form (Tr. 447).  (ECF No. 23 at 8).  Although Dr. Pollack wrote "See report," he did not provide an assessment of Plaintiff's mental functional capacity in the report (Tr. 438-444).  Of significance, the results of Dr. Pollack's MMPI-2 test indicated that plaintiff may have been exaggerating her difficulties on exam (Tr. 442), and Dr. Pollack noted that the results of the personality testing suggested the possibility of exaggeration (Tr. 443).  Based on the foregoing, the undersigned finds that the ALJ properly discounted the opinions of Dr. Pollack in this case.

With respect to the medical expert, that ALJ correctly noted that Dr. Martin indicated that only **under stress** did plaintiff display moderate difficulties (Tr. 18, 51).

Based on the reports of the above medical professionals, the ALJ found that plaintiff "had a below average pace and would be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

off-task up to 5% of the time" (Tr. 19).  The undersigned finds that the ALJ's mental RFC finding is in accord with the weight of the record evidence.  Accordingly, the ALJ did not err in so finding in this case.

**D. Credibility**

Plaintiff asserts that the ALJ erred by failing to properly consider plaintiff's testimony regarding her limitations from her various impairments.  (ECF No. 17 at 20-22).

The ALJ evaluated plaintiff's credibility and found her less than fully credible in this case (Tr. 19-21).  It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

As noted above, the results of Dr. Pollack's MMPI-2 test indicated that plaintiff may have been exaggerating her difficulties on exam (Tr. 442), and Dr. Pollack noted that the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

results of the personality testing suggested the possibility of exaggeration (Tr. 443). Although the ALJ did not discuss Dr. Pollack's findings in this regard, this possible exaggeration of symptoms by plaintiff is an important detail in the record that should be considered when discussing plaintiff's credibility.

The ALJ noted that plaintiff testified she was unable to work full-time due to chronic fatigue, pain, and flu-like symptoms (Tr. 19, 40). However, plaintiff reported that ibuprofen helped, and that muscle relaxants and her CPAP mask for sleep apnea helped her sleep (Tr. 20, 57). The ALJ also noted that plaintiff reported less flare-ups/exacerbations since beginning methotrexate treatment (Tr. 20).

Medical expert Dr. Gerber testified that he saw no clinical or laboratory evidence of arthritis in the record (Tr. 20, 43). He stated that "[o]ne cannot have arthritis with normal laboratory studies, normal physical examinations and in the absence of any characteristic x-ray changes" (Tr. 45). Dr. Gerber further stated that he saw no documentation of fibromyalgia (Tr. 44). The ALJ indicated that plaintiff had been given a diagnosis of arthralgia in 2008, but with a tapered dose of prednisone, she had improvements in all her complaints. In May 2009, it was indicated that she had arthralgias and fatigue of unclear etiology, with examinations and tests that had been completely normal (Tr. 20). The ALJ indicated that in July 2009, she had "stable medical problems" and in late 2009 and early 2010, she was noted to be doing better (arthralgia) and improved (fibromyalgia) (Tr. 21).

Medical expert Dr. Martin testified that plaintiff's ability to sustain her concentration was quite good but, because of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

physical symptoms, there would be times where she would have more trouble sustaining concentration (Tr. 51).  He described these time periods as when there was "increased stress" (Tr. 51).  The ALJ indicated that Dr. Martin believed that if plaintiff stayed on medication and participated in counseling, she would learn how to manage her complaints better (Tr. 20).

The undersigned also finds it important to note that plaintiff reported to Dr. Pollack in February 2010 that she performed the household chores of washing dishes, making beds, dusting and vacuuming (Tr. 440).  However, plaintiff testified at the administrative hearing that as far as household chores, she only occasionally unloaded the dishwasher (Tr. 20).

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for discounting plaintiff's subjective complaints are clear, convincing, and fully supported by the record.  Accordingly, the ALJ did not err by concluding that plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 22**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 16**) is **DENIED.**

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1      **IT IS SO ORDERED.**  The District Court Executive is directed

2 to file this Order, provide copies to the parties, enter judgment

3 in favor of Defendant, and **CLOSE** this file.

4      **DATED** this __30th__ day of May, 2012

5

6                              __S/James P. Hutton__
                               JAMES P. HUTTON
7                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18